UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARREN MILLS, | ) |
| Petitioner, | ) ) ) |
| vs. | ) ) Case No:  4:20CV1589 HEA |
| EILEEN RAMEY, | ) ) ) |
| Respondent. | ) |

## **OPINION, MEMORANDUM AND ORDER**

Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No.1] on November 9, 2020. Respondent filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted on December 18, 2020. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons explained below, the petition will be denied.

### **Facts and Background**

The Missouri Court of Appeals described the pertinent facts as follows:

> Viewed in the light most favorable to the verdict, the evidence adduced at trial showed the following: Appellant was not the biological father of six-year-old A.B. ("Victim"), but was the only father figure Victim knew, and Victim referred to him as "daddy." Appellant had lived with Victim and his mother, and married Victim's mother when they lived in California. Shortly after Victim turned five, they all moved to Troy, Missouri, to live with

Appellant's parents. They eventually moved out of Appellant's parents' house, and moved into their own house in Eolia, Missouri. On June 22, 2013, when Victim was staying the night at his grandmother's house, Victim said to his grandmother, "Do you know what I hate?" When Victim's grandmother said she did not know, Victim said, "I hate it when daddy and I have to put tongues in each other's mouths." When Victim's grandmother asked him what else happened between the two, Victim replied that they took their clothes off, and pointed his finger at his anus and then up in the air. This prompted Victim's grandmother to call Victim's mother and tell her what Victim said.

Shortly thereafter, Victim's mother told Appellant to pack his things and move out of the house. About three to four weeks later, Victim's mother and grandmother decided to take Victim to see a child psychologist, who decided to call the Division of Family Services ("DFS") after listening to what Victim told him. Sean Flynn ("Flynn"), a deputy with the Lincoln County Sheriff's Office received the hotline call, and met with Victim and Victim's mother at their home. They then set up a forensic interview.

Brittany Pursifull ("Pursifull") conducted a Children's Advocacy Center (CAC) interview with Victim. Victim told Pursifull that Appellant put his hand in Victim's bottom, and said he felt Appellant's fingers and half of his hand, describing that it felt like "a bear" and that it stung like a bee sting. Victim also said that Appellant sucked on his "boobs" and his penis, that he learned how to suck on Appellant's penis by Appellant sucking on Victim's penis, which Victim referred to as "wiener" or "schneedle," and that Appellant gave him "sloppy kisses." Victim described these events using anatomical dolls. Victim also said this happened more than once, and that it occurred when no one else was home. Because Victim had gotten tired during the first interview, a second forensic interview was conducted. Shandi Joubert-Kanz ("Kanz") conducted the second CAC interview with Victim. Kanz was asked to clarify the locations Victim spoke about in the first interview. Victim told Kanz that his dad "put his hand in [Victim's] butt, put his mouth on Victim's wiener, and that they had put their tongues in each other's mouths." Victim said these events always took place "in the same house," but then said it happened in California and where they lived in Troy. After Kanz took a break to talk to members of the MultiDisciplinary Team, she asked Victim to describe his father's room in California and the house in Troy. When Kanz asked Victim if these things happened anywhere else, he replied they did not and especially not in Eolia. However, when

Kanz asked him if "sloppy kisses" happened in Eolia, Victim answered, "No, only once." He further explained that things happened in the bed of his mom and dad's bedroom, and described to Kanz the sheets and blanket on the bed.

Appellant was charged with one count of statutory sodomy for "putting his mouth on [Victim's] penis" and a second count of statutory sodomy for "putting his hand in [Victim's] buttocks." After trial, jurors returned verdicts finding Appellant guilty of two counts of first-degree statutory sodomy, and Appellant was sentenced to two consecutive life sentences. This appeal follows.

## Standard

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). Federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.' " *Woods v. Donald*, 575 U.S. 312, 315 (2015) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by the AEDPA [the Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). For a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court's adjudication on the merits:

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* at § 2254(e)(1). A state court's decision is "contrary to" clearly-established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.' " *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent occurs where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id*.

Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. *Sweet v. Delo*, 125 F.3d 1144, 1150 (8th Cir. 1997). (cited case omitted). A

4

state prisoner who "fails to follow applicable state procedural rules for raising the claims is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Id*. at 1151 (cleaned up) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " *Id*. at 411-12. A state-law claim raised in state court that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Id*. at 412.

If the petitioner failed to properly present the claim in state court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; see also *Martinez v. Ryan*, 566 U.S. 1, 10-11 (2012).

5

## Discussion

Petitioner asserts three grounds for relief in his habeas petition. In his first ground, Petitioner claims the trial court misled

> Petitioner and his attorney during the voir dire process in regard to potential juror number nine, the trial judge's brother in law, as to whether there was a family history regarding sexual abuse, and as a result Petitioner's attorney failed to make a further record regarding juror number nine's qualifications and get juror number nine struck for cause which ultimately violated the petitioner's right to due process of law, the effective assistance of counsel, and the right to a fair and impartial jury as guaranteed by the Fifth, Sixth and Fourteenth Amendments.

In his second ground, petitioner claims

> the trial court erred when it did not allow the defense to call its expert witness, a certified safe examiner, to rebut the state's evidence and present a defense to the charges in violation of his right to due process of law and to present witnesses in his defense as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

In his third ground, he claims that

> Petitioner's trial counsel was ineffective, in violation of his rights to due process of law and the effective assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth amendments to the United States Constitution, when he did not make a sufficient offer of proof as to proffered defense witness Jennifer Johnson because he never bothered to inform the trial court that the state had already made physical evidence an issue in the case through its witness, Shandi Joubert-Kanz, who testified that physical evidence is only present in these types of cases less than three percent of the time.

**Ground One**

Petitioner claims that the trial court misled him and his attorney during *voir dire* about Juror # 9 having a family history of sexual abuse. Petitioner did not

6

raise this claim on direct appeal. In his Rule 29.15 Motion, Petitioner did not raise this issue as an ineffective assistance claim against trial counsel. The Missouri Court of Appeals found that the trial error claim regarding the judge's brother-in-law was waived because it was a direct appeal claim, not a claim to be raised in a Rule 29.15 motion, and it appeared for the first time in the appeal of the Rule 29.15 Motion.

A petitioner may not allege "cause" excusing the default of a claim of trial court error based on ineffective assistance of appellate counsel if he did not assert a claim of ineffective assistance of appellate counsel for not raising the alleged trial error claim. *See Edwards v. Carpenter,* 529 U.S. 446, 450–54 (1999); *see also Johnson v. Lewis*, No. 1:18-CV-00193-ACL, 2020 WL 7770824, at *3 (E.D. Mo. Dec. 30, 2020); *Fields v. Roper,* 448 F.Supp.2d 1113, 1117 (E.D. Mo. 2006). Ground One is procedurally barred.

**Ground Two**

For his Ground Two, Petitioner claims the trial court erred when it did not allow the defense to call its expert witness, a certified SAFE (Sexual Abuse Forensic Examination) examiner, to rebut the state's evidence and present a defense to the charges in violation of his right to due process of law and to present witnesses in his defense as guaranteed by the sixth and fourteenth amendments to the united states constitution.

7

The State Appellate Court discussed this issue in its Opinion:

The trial court precluded Johnson, a SAFE examiner, from testifying for the defense after concluding her testimony would not have been relevant. Appellant argued at trial that Johnson would not comment on the evidence, but would have testified on what sort of things a victim should have experienced if there had been penetration.

1. Standard of Review

A trial court typically has broad discretion in deciding whether to admit evidence, and, as such, its decision will not be disturbed unless a clear abuse of discretion is shown. *State v. Berwald*, 186 S.W.3d 349, 358 (Mo. App. W.D. 2005). Discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *State v. Kemp*, 212 S.W.3d 135, 145 (Mo. banc 2007). Additionally, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *Id*. Trial court error is not prejudicial unless there is a reasonable probability that the court's error affected the outcome of the trial. *Id*. at 145-46.

2. Analysis

Appellant argues the trial court abused its discretion in precluding Johnson's testimony, because when Kanz testified regarding the expectation of physical findings of abuse, it opened the door for Appellant to offer evidence in his defense on that issue. Appellant further contends that Johnson's testimony would have refuted the allegation that Appellant inserted half his hand in Victim's anus by testifying that pain or bleeding would reasonably be expected to be present if such an allegation were true, which would be relevant to the evidence presented at trial. The trial court noted that if there had been a SAFE exam, Johnson would have been able to testify, but absent such an examination, the court found Johnson's testimony was irrelevant. Appellant then made an offer of proof by putting Johnson on the stand. An offer of proof must show three things: "(1) what the evidence will be; (2) the purpose and object of the evidence, and (3) each fact essential to establishing the admissibility of the evidence." *State v. Tisius*, 92 S.W.3d 751, 767 (Mo. banc 2002). Where proffered evidence is excluded, relevancy

> and materiality must be shown by specific facts sufficient to establish admissibility so as to preserve the matter for review. *Id.*
>
> Appellant contends Johnson's testimony was essential to Appellant's defense that no penetration occurred, but Appellant's offer of proof did not show Johnson's testimony would be relevant to accomplish this. Johnson testified that damage or injury may or may not occur from a finger or fingers being inserted into a child's anus. Johnson also testified that she did not review any medical reports in this case, she did not review a SAFE exam, and she did not meet with Victim in this case. Further, Johnson testified that she could not have any first-hand knowledge of what would have occurred without doing a SAFE exam or reviewing a SAFE exam. Although Johnson reviewed the testimony Victim gave at trial and his statements made during the forensic interviews, her medical opinion essentially was that there was potential for there to be traumatic injury, as well as potential for there to be no traumatic injury. This testimony does not come close to refuting the allegation that Appellant penetrated Victim's anus with his finger or fingers. Johnson's conclusion that there may or may not have been an injury does not contribute to Appellant's defense, the trial court did not abuse its discretion in precluding her testimony. Appellant's fourth point is denied.

The Missouri Appellate Court denied his claim, explaining that the testimony was not logically and legally relevant. *U.S. v. Scheffer*, 523 U.S. 303, 309 (1998) ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " (internal citations omitted)).

Because the Court of Appeals adjudicated his claim on the merits, Petitioner cannot obtain habeas relief under § 2254(a) unless the decision was either "contrary to, or involved an unreasonable application of, clearly established

9

Federal law" under § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2). Petitioner argues this ruling violates Petitioner's right to present a defense.  Petitioner further claims that he was unable to rebut the testimony of Joubert-Katz that "[i]n general, the medical findings are less than 3 percent."

The Court of Appeals affirmed the trial court's exclusion of the evidence because Petitioner failed to establish its relevance to the case during his offer of proof. In Missouri, evidence must be logically and legally relevant to be admissible: "[e]vidence is logically relevant if it tends to make the existence of any fact more or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal of the case," and "[e]vidence is legally relevant if its probative value outweighs its cost-prejudice, confusion of issues, misleading the jury, undue delay, waste of time or cumulativeness." *State v. Barriner*, 111 S.W.3d 396, 400-01 (Mo. banc 2003).

The Appellate Court thoroughly discussed what testimony Johnson would have given.  She testified that damage or injury *may or may not* occur.  She did not perform a SAFE exam, and she did not meet with the victim in this case.  She could not have any first-hand knowledge of what would have occurred without doing a SAFE exam or reviewing a SAFE exam. Her medical opinion was that

10

there was potential for traumatic injury as well as potential for there to be no traumatic injury.

The factual findings of the Court of Appeals are "presumptively correct" and they also "enjoy support in the record." *See Ryan*, 387 F.3d at 790. Nothing in Petitioner's petition or the state-court records suggests that the Court of Appeals' ruling was "based on an unreasonable determination of the facts." *See* § 2254(d)(2). Johnson's testimony was neither definitive nor relevant because her expertise was in performing SAFE exams and no SAFE exam was performed. She essentially would have testified that there "could have been traumatic injury or not." This evidence would not be relevant to rebut the State's expert testimony.

Petitioner now contends that Johnson should have been allowed to testify to dispute the "3 percent" medical evidence. She has now submitted a Declaration that she vehemently disputes that percentage. Aside from the fact that Petition has just raised this argument for the first time, Petitioner fails to establish that even if he would have presented this specific argument to the State Courts, he has not overcome the relevance issue. Johnson is a SAFE examiner. Because there was no SAFE exam performed by her or anyone else,  her testimony, and thereby her disagreement with the State expert was *still*  not relevant to the case. There is clearly no foundation for Johnson's testimony.

**Ground Three**

Petitioner's third ground for relief, as Petitioner points out, is closely intertwined with his second ground. Petitioner claims that counsel was ineffective for failing to present a legally sufficient offer of proof. Petitioner challenges trial counsel's failure to inform Johnson that the state's witness had already testified that "medical findings are less than three percent" in these types of cases, and failure to ask Johnson for her opinion regarding this statistic.

Once again, the Appellate Court found Johnson's testimony not relevant to the case. Her disagreement with the State's expert accordingly would not have had the proper foundation to be admissible. Because Johnson's testimony regarding possible traumatic injury or no traumatic injury, no examination of the victim, no review of any medical records, was determined to be irrelevant, her disagreement with the State's expert would not have been properly before the jury. Petitioner can establish no prejudice by counsel's failure to inform her of the statistic and failure to ask her opinion. *Strickland.*

To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must satisfy the two-prong *Strickland v. Washington*, 466 U.S. 668 (1984) test and show: "(1) that counsel's performance was deficient, in that he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that counsel's deficient performance prejudiced Appellant's defense." *Robinson v. State*, 497

12

S.W.3d 298, 301 (Mo. App. E.D. 2016) (citing *Strickland*, 466 U.S. at 686; *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002)).

To meet the performance prong, a movant must "overcome the presumptions that any challenged action was sound trial strategy, and counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Id*. To prove prejudice, a movant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland*, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance of counsel, a petitioner must show both that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." *Id*. at 687-88. *Strickland* provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

On federal habeas review, the Court does not determine whether Petitioner's counsel provided effective assistance, but instead "whether the state court's application of the *Strickland* standard was unreasonable." See *Harrington*, 562 U.S. at 101; see also *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. at 105.

The Missouri Court of Appeals correctly identified *Strickland* as the standard to apply regarding counsel's offer of proof. That court's application of the *Strickland* standard to this claim of ineffective assistance of trial counsel was not unreasonable for the reasons stated by it. The Court of Appeals agreed that her testimony was not relevant to the case for all of the reasons stated in the Opinion. See *Harrington*, 562 U.S. at 101. Even if counsel had asked Johnson about the statistic, she would not have been allowed to testify. Consequently, this ground for relief must be denied.

14

## Certificate of Appealability

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. 28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court will not issue a certificate of appealability as to any claims raised in the § 2254 petition.

## Conclusion

The Court denies Petitioner's petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. The Court will not issue a certificate of appealability.

A separate judgment is entered this date.

Dated this 1st day of April, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE